UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STEVEN BETTINGER, as Trustee of the Jodi
Renee Bettinger Revocable Trust Agreement
Dated 12/20/05,

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-3-11

                               Plaintiff,                    10 Civ. 7653 (PKC)

               -against-
                                                             MEMORANDUM
                                                             AND ORDER

JACK DOUECK, Individually, and LISA BRUH,
Individually,

                               Defendants,
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

    The plaintiff in this action contends that the two defendants are personally liable for his inability to redeem investments that he made in a non-party hedge fund. According to the Amended Complaint (the "Complaint"), he is entitled to damages in the amount of $247,415.62 because the defendants misstated anticipated dates for the redemption of his investment. The plaintiff additionally contends that defendant Jack Doueck, a general partner of the hedge fund, misrepresented the financial benefits that he would receive as a consequence of the fund's merger with another entity. Subject matter jurisdiction is based on complete diversity of citizenship. 28 U.S.C. § 1332(a).

    As explained, the motion to dismiss is granted as to defendant Lisa Bruh. Bruh's alleged misconduct was limited to e-mails confirming receipt of the requests for the redemption of plaintiff's investment and communicating the anticipated date of redemption. Doueck, by contrast, is alleged to have been a general partner of the hedge fund, of which plaintiff was a limited partner, and, thus, owed fiduciary duties to

plaintiff.  Doueck allegedly misled the plaintiff into voting in favor of a merger that inured for Doueck's financial benefit and to the detriment of the plaintiff.  In the process, he allegedly concealed losses to the hedge fund.  The motion to dismiss plaintiff's claims against Doueck is denied.

BACKGROUND

For the purposes of the defendants' motion, all nonconclusory factual allegations are accepted as true.  Matson v. Bd. of Educ. of City School Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009).  As the non-movants, all reasonable inferences are drawn in favor of the plaintiffs.  Matson, 631 F.3d at 63.

Plaintiff Steven Bettinger is the trustee of the Jodi Renee Bettinger Revocable Trust Agreement Dated 12/2/05 (the "Trust").  (Compl. ¶ 1.)  In 2008, Bettinger, while acting in his capacity as trustee, invested $350,000 of the Trust's money with the non-party Stillwater Asset Backed Fund II (the "Fund"), a limited partnership that "operates as a pooled investment vehicle" to invest in short- and medium-term loans.  (Compl. ¶¶ 15, 21.)  Defendant Jack Doueck is managing principal of Stillwater Capital Partners, Inc. ("Stillwater") and defendant Lisa Bruh is Stillwater's fund administrator.  (Compl. ¶¶ 2-3.)  Stillwater is the Fund's investment manager, "with discretionary authority" over Fund investments.  (Compl. ¶ 18.)  Doueck communicates directly with the Fund's investors, including Bettinger.  (Compl. ¶ 7.)  The Complaint alleges that Doueck acts as the Fund's general partner and investment manager.  (Compl. ¶ 64)

In or around October 2008, approximately five months after first making a deposit in the Fund, Bettinger grew dissatisfied with its performance, and sent an e-mail

requesting the redemption of $200,000 of his investment. (Compl. ¶ 22.) Bruh confirmed the redemption request in an e-mail of October 14, 2008, stating that payment was scheduled to follow within 30 days. (Compl. ¶ 22.) On November 3, 2008, Bettinger sent an e-mail requesting confirmation of his redemption request, and defendant Bruh responded with an e-mail that extended the anticipated time of payment to 60 days. (Compl. ¶ 24.) On November 12, 2008, Bettinger then requested a full redemption of his investment, and Bruh replied that payment would be made by March 1, 2009. (Compl. ¶ 25.) A contemporaneous summary of Bettinger's portfolio "indicate[d]" that his total withdrawal would amount to $372,415.62. (Compl. ¶¶ 26-27.) As of the filing of the Complaint, however, Bettinger has redeemed a total of $125,000, leaving $247,415.62 due and owing from the Fund. (Compl. ¶ 28.)

In 2009, Stillwater began "merger" negotiations with non-party Gerova Financial Group Ltd. ("Gerova").[1] (Compl. ¶ 32.) According to the Complaint, Doueck personally wanted to consummate the merger in order to conceal Stillwater's liabilities and receive a commission for the benefit of Stillwater insiders. (Compl. ¶ 35.) Bettinger alleges that Doueck personally called him to "indicat[e]" that Stillwater planned to merge with Gerova, and "strongly advised" Bettinger, as a shareholder, to vote in favor of the merger. (Compl. ¶¶ 38-39.) Doueck also "indicated" to Bettinger that if Gerova and Stillwater merged, he "would likely recover" his investment, but that if they did not, he would not receive the balance of his investment. (Compl. ¶ 40.) The Complaint alleges that in truth, Doueck never intended to return Bettinger's money, and the transaction was

---

[1] The Complaint annexes, at Exhibit I, a document titled "Agreement and Plan of Merger." The Complaint does not allege the nature of the transaction between Stillwater and Gerova.

made for Doueck's benefit.  (Compl. ¶ 41.)  Based on Doueck's "misrepresentations" and "omissions," Bettinger voted in favor of the merger.  (Compl. ¶ 42.)

According to the Complaint, after the merger's completion, Stillwater insiders benefited from approximately $24 million in management fees, and Doueck was placed in a position to benefit himself at the expense of Stillwater's creditors and shareholders.  (Compl. ¶¶ 44-48.)  Bettinger alleges that in a phone conversation, Doueck told him that he didn't care about Gerova's share price.  (Compl. ¶ 49.)  Such a comment is at odds with Bettinger's interests, because his investment "is directly related" to Gerova's share value.  (Compl. ¶ 49.)

The Complaint asserts fraud, negligent misrepresentation and promissory estoppel claims against both Doueck and Bruh, and breach of fiduciary duty, unjust enrichment and constructive fraud claims against Doueck.  (Compl. ¶¶ 51-101.)

RULE 12(b)(6) AND RULE 9(b) STANDARDS

Rule 8(a)(2), Fed. R. Civ. P., requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (ellipsis in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the grounds upon which the claims rest, through factual allegations sufficient "'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1949-50.

Separately, Rule 9(b), Fed. R. Civ. P., requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Thus, while the 'actual . . . fraud alleged must be stated with particularity . . . the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity.'" Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir. 2000) (ellipsis and alteration in original; quoting Chill v. Gen'l Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996)). A fraud claim still must offer allegations "that give rise to a strong inference of fraudulent intent." S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 634 (2d Cir. 1996). A complaint may successfully plead intent "by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. In a case with multiple defendants, a complaint must allege a factual basis for the scienter of each defendant. In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 695 (2d Cir. 2009). "This can consist of allegations as to who 'possessed . . . knowledge' of the fraud, 'when and how they obtained [that] knowledge,' or even why they 'should have known' of the fraud." Id. (ellipsis and alteration in original; quoting Devaney v. Chester, 813 F.2d 566, 568 (2d Cir. 1987)).

PLAINTIFF'S CLAIMS ARE GOVERNED BY NEW YORK LAW

The Complaint does not allege which jurisdiction's laws govern its claims but the parties' memoranda of law cite to New York authority. The plaintiff is a citizen of Florida and the two defendants are alleged to be citizens New York. (Compl. ¶¶ 1-3.) Limited Partnership Agreement of the Fund identifies it as a limited partnership formed under Delaware law, with a business address in New York. (Compl. Ex. C at §§ 1.01, 1.04.) The Limited Partnership Agreement provides that it "shall be construed in accordance with and governed by the laws of the State of Delaware." (Compl. Ex. C at § 14.05.)

In Finance One Public Co. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 334 (2d Cir. 2005), the Second Circuit, reviewing New York authority, noted the "reluctance" of New York courts "to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action." This is the case even for a fraud claim that arises incident to a contract. Id. at 335. While a contractual choice-of-law clause could be broad enough to cover tort claims that arise incident to a contract, "no reported New York cases present such a broad clause." Id.

Assuming arguendo that a conflict exists between the laws of New York and the laws of either Delaware or of Florida (the state of plaintiff's citizenship), the plaintiff's claims, all of which sound in tort, would be governed by New York law. New York has the greatest interest in regulating tortuous conduct occurring in New York that allegedly was committed by New York citizens. See, e.g., DeMasi v. Rogers, 34 A.D.3d 720, 720 (2d Dep't 2006) (discussing interest analysis test in tort claims); K.T. v. Dash, 37 A.D. 3d 107, 111 (1st Dep't 2006) (same). Moreover, while they are not parties to the

action, Stillwater and the Fund both have New York places of business (Compl. ¶ 2 & Ex. C), and the plaintiff's tort claims do not purport to rely on any provisions of the Limited Partnership Agreement, which, as noted, is to be construed using Delaware law. Consistent with the parties' memoranda of law, I conclude that New York law governs the plaintiff's claims.

DISCUSSION

      I.    ALL CLAIMS AGAINST DEFENDANT LISA BRUH ARE DISMISSED.

The plaintiff's three causes of action against defendant Bruh are based on discrete, limited statements that appear to have been made in an administrative capacity while she was employed as a fund administrator of Stillwell Capital Partners, Inc. The allegations of wrongdoing by Bruh are limited. The Complaint identifies Bruh as "the Fund Administrator" at Stillwater, and describes her as an agent of Doueck. (Compl. ¶¶ 3, 8.) Her allegedly unlawful acts are limited to three e-mails that confirmed receipt of the plaintiff's redemption requests and set forth anticipated dates in which his investment in the Fund would be redeemed. (Compl. ¶¶ 22, 24, 25.) There is no allegation that she personally benefited from her conduct or communicated with the plaintiff in a capacity other than as an employee of Stillwater and/or the Fund. As explained below, the Complaint merely notes Bruh's statements to the plaintiff and, in conclusory fashion, alleges that they are sufficient to establish her liability. (Compl. ¶¶ 59-60.) The claims against her are dismissed.

      A.   The Complaint's Fraud Claim against Bruh Fails to Satisfy <u>Rule 9(b).</u>

To state a fraud claim under New York law, a plaintiff must allege "'material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages.'" <u>Pramer S.C.A. v. Abaplus Int'l Corp.</u>, 76 A.D.3d 89, 98 (1st Dep't 2010) (quoting <u>Art Capital Grp., LLC v. Neuhaus</u>, 70 A.D.3d 605, 607 (1st Dep't 2010)). The Complaint asserts that Bruh misrepresented "that Plaintiff would receive investment funds within the time frame as previously set forth herein." (Compl. ¶ 58.)

The Complaint does not allege misstatements amounting to fraud. In his opposition memorandum, the plaintiff quotes the following e-mailed statements, all of which he asserts to be fraudulent:

- We have your redemption in place for 11/1. Please note that payment will take up to 30 days. (Compl. ¶ 22 & Ex. D.)
- I am confirming the redemption is in place for 11/1. However, please note that payment could take up to 60 days due to the current market environment. (Compl. ¶ 24 & Ex. E.)
- I am confirming receipt of your full redemption request from the [Fund] as of 3/1/09. (Compl. ¶ 25 & Ex. F.)

First, as statements that set a schedule for future payments, these remarks do not constitute fraud. "[A] prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud." <u>Thomas v. McLaughlin</u>, 276 A.D.2d 440, 441 (1st Dep't 2000); <u>accord</u> <u>ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC</u>, 50 A.D.3d 397, 398-99 (1st Dep't 2008); <u>Dragon Inv. Co. II LLC v. Shanahan</u>, 49 A.D.3d 403, 403 (1st Dep't 2008). The Complaint does not plausibly

Case 1:10-cv-07653-PKC   Document 27   Filed 06/03/11   Page 9 of 14
- 9 -

allege facts showing that at the time the statements were uttered, Bruh knew them to be false.

Second, the Complaint does not plausibly allege that these statements were intended to induce reliance or that they resulted in reliance by the plaintiff. It merely alleges, in conclusory fashion, that Bruh's statements "were intended to induce Plaintiff to act on the basis of the misrepresentations and omissions. Plaintiff's actions were taken in justifiable reliance upon the false statements, misrepresentations, and omissions." (Compl. ¶ 60.) The Complaint identifies no actions that Bruh intended to induce, or what actions were taken by the plaintiff as a consequence of Bruh's remarks.

Finally, the Complaint does not adequately allege scienter on the part of Bruh. To satisfy Rule 9(b), a fraud claim must be supported by allegations "that give rise to a strong inference of fraudulent intent." S.Q.K.F.C., Inc., 84 F.3d at 634. The Complaint merely alleges that Bruh "knew the representations were false or was recklessly indifferent to their truth." (Compl. ¶ 59.) Such a conclusory allegation does not plead motive or opportunity to commit fraud, or, alternatively, facts indicating strong circumstantial evidence of misbehavior or recklessness. S.Q.K.F.C., Inc., 84 F.3d at 634.

The Complaint therefore fails to allege that Bruh committed acts of fraud.

> B. The Negligent Misrepresentation Claim against Bruh Fails to Satisfy Rule 9(b).

"It is well settled that '[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 180 (2011) (quoting J.A.O.

Acquisitions Corp. v. Stavitsky, 8 N.Y.3d 144, 148 (2007)).  The misrepresentation must be made "for the very purpose of inducing action," and the action may not be merely "an indirect or collateral consequence" thereof.  Prudential Ins. Co. v. Dewey Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382 (1992).  A negligent misrepresentation claim that is based on the same set of facts as a fraud claim must satisfy Rule 9(b).  See, e.g., Ebusinessware, Inc. v. Technology Servs. Grp. Wealth Mgt. Solutions, LLC, 2009 WL 5179535, at *13 (S.D.N.Y. Dec. 29, 2009) (collecting cases).

In opposition to the motion to dismiss, the plaintiff incorporates by reference his arguments raised in opposition to dismissal of the fraud claim.  (Opp. Mem. at 10.)  The negligent misrepresentation claim is dismissed against Bruh, because the anticipated redemption dates only amounted to "statements of prediction or expectation."  Pacnet Network Ltd. v. KDDI Corp., 78 A.D.3d 478, 479 (1st Dep't 2010) (dismissing negligent representation claim "absent allegations that the prediction was contradicted by a concrete, existing fact . . . .") (quotation marks omitted).

The plaintiff also incorporates arguments raised in opposition to the dismissal of his breach of fiduciary claim against Doueck.  (Opp. Mem. at 10.)  No fiduciary obligation is alleged as to Bruh, however, and aside from a generalized allegation that Bruh had a duty to provide accurate information to the plaintiff (Compl. ¶ 71), no "special or privity-like relationship" is alleged between Bruh and the plaintiff.  Mandarin Trading, 16 N.Y.3d at 180.  The failure to allege such a relationship is a separate basis to dismiss the negligent misrepresentation claim against Bruh.

      C. <u>The Promissory Estoppel Claim against Bruh is Dismissed.</u>

    "The elements of a cause of action based upon promissory estoppel are a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance on that promise." <u>Williams v. Eason</u>, 49 A.D.3d 866, 868 (2d Dep't 2008). The Complaint asserts that Bruh "made a clear and unambiguous promise to return Plaintiff's investment on dates certain," and that the plaintiff relied on her promise. (Compl. ¶¶ 93-94.) The e-mails from Bruh, however, merely confirmed receipt of the plaintiff's redemption requests and set forth anticipated redemption dates. (Compl. ¶¶ 22, 24-25 & Exs. D, E & F.) As presently alleged, the e-mails did not communicate "clear and unambiguous promise[s]" personally made by Bruh, <u>Williams</u>, 49 A.D.3d at 868, but were instead administrative correspondence confirming the plaintiff's redemption requests and anticipating dates of redemption. There is, moreover, no allegation that Bruh's conduct caused an "unconscionable" injury. <u>See</u>, <u>e.g.</u>, <u>Richter v. Zabinsky</u>, 257 A.D.2d 397, 398 (1st Dep't 1999). The plaintiff's promissory estoppel claim against Bruh is dismissed.

      II. THE MOTION TO DISMISS PLAINTIFF'S CLAIMS AGAINST DOUECK IS DENIED.

    The Complaint alleges that Doueck was a principal of both the Fund and of Stillwater, and that his responsibilities encompassed direct communications with investors, including the plaintiff. (Compl. ¶¶ 6-7.) The Complaint alleges that Doueck had "dominant authority and control" over Stillwater and its related entities, including the Fund. (Compl. ¶¶ 19, 32.) He is separately identified as the Fund's general partner and investment manager. (Compl. ¶ 64.) The Complaint alleges that Doueck personally engineered the Stillwater merger with Gerova, and that he stood to benefit financially

from the merger.  (Compl. ¶¶ 32, 35, 41, 44-48.)  For the purposes of this motion, Doueck assumes that he owed a fiduciary duty to the plaintiff.  See, e.g., Appleton Acquisition, LLC v. Nat'l Housing P'ship, 10 N.Y.3d 250, 258 (2008) ("[G]eneral partners always have fiduciary responsibilities to limited partners and any fraud by a general partner necessarily constitutes a violation of that duty.") (internal citation omitted).

As previously noted, Rule 9(b) applies to plaintiff's causes of action for fraud and negligent misrepresentation.  Wight, 219 F.3d at 91; Ebusinessware, Inc., 2009 WL 5179535, at *13.  The Second Circuit has held that Rule 9(b) will apply to any claim that "sounds in fraud."  Rombach v. Chang, 355 F.3d 164, 166, 170 (2d Cir. 2004).  Depending on the particular allegations, Rule 9(b) may apply to claims of constructive fraud, Matsumura v. Benihana National Corp., 542 F. Supp. 2d 245, 251-52 (S.D.N.Y. 2008), and breach of fiduciary duty.  DeBlasio v. Merrill Lynch & Co., 2009 WL 2242605, *10 (S.D.N.Y. July 27, 2009).  In this instance, the claims of constructive fraud and breach of fiduciary duty are premised on knowing misrepresentations made by Doueck in service of his own self-enrichment.  (Compl. ¶¶ 78, 87, 89.)  They sound in fraud, and are governed by Rule 9(b).

Plaintiff's claims against Doueck satisfy Rule 9(b).  As noted, a Complaint may raise a strong inference of fraudulent intent by alleging motive and opportunity to commit fraud.  S.Q.K.F.C., Inc., 84 F.3d at 634.  The Complaint alleges that given his positions of authority at Stillwater and the Fund, Doueck had the opportunity to commit acts of fraud.  He allegedly did so for the purposes of benefiting himself, including facilitating $24 million in fees for himself and other Stillwater insiders, while

simultaneously concealing Stillwater's liabilities. (Compl. ¶ 35, 46-47.) These allegations of motive and opportunity are sufficient to raise a strong inference of fraudulent intent. The Complaint also has alleged that, when soliciting the plaintiff's vote in favor of the Stillwater-Gerova merger, Doueck made misrepresentations and omissions concerning the merger, including the false representation that the merger would result in the plaintiff redeeming his investment. (Compl. ¶¶ 38-41.) The Complaint also asserts that, subsequent to the merger, Doueck expressly stated that he is uninterested in Gerova's share price, which, the plaintiff contends, negatively affects his ability to redeem his investment. (Compl. ¶ 49.) To the extent that Doueck argues that the fraud, constructive fraud, negligent misrepresentation and breach of fiduciary duty claims should be dismissed for failure to satisfy Rule 9(b), the motion to dismiss is denied.

    The Complaint also asserts claims of promissory estoppel and unjust enrichment. As previously noted, a promissory estoppel claim requires a "clear and unambiguous promise," reliance and injury. <u>Williams</u>, 49 A.D.3d at 868. To state a claim for unjust enrichment, a plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" <u>Cruz v. McAneney</u>, 31 A.D.3d 54, 59 (2d Dep't 2006). These claims must alleged consistent with Rule 8, Fed. R. Civ. P., and do not need to satisfy Rule 9(b).

    Doueck argues that the Complaint has not adequately alleged unconscionable injury, and that the promissory estoppel claim must be dismissed. If, however, Doueck promised redemption of the plaintiff's investment if the merger was

consummated while knowing that his promise was illusory, the alleged injury may plausibly be unconscionable. See, e.g., Richter v. Zabinsky, 257 A.D.2d 397, 398 (1st Dep't 1999). Doueck also argues that it is implausible to allege that Doueck personally was enriched by the plaintiff's specific investment, given that it was a proportionally small part of the Fund's holdings. Such a position is better raised after the close of discovery, either through a summary judgment motion or in a trial on the merits.

CONCLUSION

The defendants' motion to dismiss is GRANTED as to all claims against defendant Lisa Bruh, but DENIED as to all claims against Jack Doueck.

The Clerk is directed to terminate the motion (Docket # 20) and to amend the caption to reflect that Jack Doueck is the only remaining defendant in this action.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 3, 2011